An unpublished order shall not be regarded as precedent and shall not be cited as legal authority. SCR 123.

# IN THE SUPREME COURT OF THE STATE OF NEVADA

DANIEL JOSEPH LEIGHTY,
Appellant,
vs.
THE STATE OF NEVADA,
Respondent.

No. 64123

**FILED**

MAY 1 2 2014

TRACIE K. LINDEMAN
CLERK OF SUPREME COURT
BY_____
DEPUTY CLERK

## ORDER OF AFFIRMANCE

This is an appeal from a judgment of conviction, pursuant to a jury verdict, of intimidating a witness. Second Judicial District Court, Washoe County; Scott N. Freeman, Judge.

Appellant Daniel Joseph Leighty contends that the evidence presented at trial was insufficient to support the jury's finding of guilt. This claim lacks merit because the evidence, when viewed in the light most favorable to the State, is sufficient to establish guilt beyond a reasonable doubt as determined by a rational trier of fact. *See Origel-Candido v. State*, 114 Nev. 378, 381, 956 P.2d 1378, 1380 (1998); *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

Duane Cater testified that he was beaten and robbed by several individuals. Cater identified Ronald Robinson and Brian Dare as two of the individuals involved. Approximately six days later, Cater was at a casino when an acquaintance of Robinson's, Angel, spotted Cater. Angel called someone and shortly thereafter Mike Robbins approached Cater. Robbins told Cater that he needed to "go look someone in the eyes" and tell that person that he did not file a report about the robbery. Cater assumed the person he was going to talk to was Krystyna, Robinson's

SUPREME COURT
OF
NEVADA

(O) 1947A

14-15286

girlfriend. Robbins told Cater that they needed to go outside to talk to the person and threatened that he would shove Cater's head into a slot machine or knife him if Cater did not go with him. Cater exited the casino with Robbins, Angel, and Leighty. They all got into a Subaru, with Leighty driving and Cater in the front passenger seat. Cater was blindfolded with a T-shirt and Robbins threatened Cater that if he took off the blindfold or talked Robbins would "gut" him. Cater was taken to a building and directed to sit down and the blindfold was removed. Cater recognized the room he was in as an automotive paint booth in a body shop. After a while, Robbins left to pick up the person Cater was to talk to. While waiting, Angel told Cater everything was going to be ok, he just needed to tell the truth, and they wanted him to write a statement "that the people who robbed you in the Cal-Neva were there to help you move, that you fell down in the shower, and you stumbled off to the middle of the room and passed out because you broke your nose falling out of the shower." Robbins returned shortly thereafter and told Cater that he would kill Cater and kidnap Cater's son if he did not convince Krystyna and fill out the statement. Sometime after Robbins returned, two other people, Cowboy and Taylor, arrived at the body shop. Robbins continued to threaten Cater for a period of time and, at some point, Cater was made to stand, the chair was moved, plastic was rolled out on the floor beneath him, the chair was replaced, and he was directed to sit back down. Cater testified that he was afraid that they were going to knife or "gut" him. Cater ultimately wrote the statement he was directed to write, signed it, and left it on a table in the paint booth. After he signed the statement, the blindfold was replaced, Cater was put back in the car, and Angel and

Supreme Court
of
Nevada

(O) 1947A

2

someone else drove him back to the downtown area, forcing him out of the car while it was moving.

Cater testified that, although Leighty never spoke during the entire incident, he could see Leighty in his peripheral vision and Leighty was "milling around" behind him. He further testified that he believed it was Leighty that rolled the plastic underneath him.

Leighty's police interview was shown to the jury. During the interview, Leighty admitted that he drove the Subaru to the body shop and he had keys to the body shop because he had occasionally worked there. Leighty denied any knowledge of what Robbins and Angel had planned to do to Cater and stated that he did not spend much time in the paint booth. Leighty stated he heard some comments that made him realize things were getting scary and, at that time, his main concern was to get Cater out of the shop safely. Although Leighty denied any knowledge of a threat to Cater's son, he thought that there had been mention of a young girl or boy. Leighty admitted that he and Angel drove Cater back downtown and that Cater was blindfolded at this time.

The police also recovered numerous text messages that were exchanged between Leighty and Robbins during and after the incident. Two messages were sent by Leighty during the incident telling Robbins to hurry up and they had to be out of the building by 5:00 a.m. After the incident, Leighty sent Robbins one message informing him that he was "flying under the radar" and another saying that they needed to sell the car, get the Infinity, and leave so they could get at least a 10-12 hour head start.

The jury could reasonably infer from the evidence presented that Robbins and/or Angel intimidated a witness by threatening to kill or

SUPREME COURT
OF
NEVADA

(O) 1947A

cause injury to Cater and/or Cater's son unless Cater recanted his accusations against Robinson and that Leighty aided and abetted Robbins and/or Angel by acting as a driver and providing access to the auto body shop. *See* NRS 199.240(2)(a). It is for the jury to determine the weight and credibility to give conflicting testimony, and the jury's verdict will not be disturbed on appeal where, as here, substantial evidence supports the verdict. *See Bolden v. State*, 97 Nev. 71, 73, 624 P.2d 20, 20 (1981); *see also McNair v. State*, 108 Nev. 53, 56, 825 P.2d 571, 573 (1992).

Therefore, we

ORDER the judgment of conviction AFFIRMED.

_____, J.
Hardesty

_____, J.
Douglas

_____, J.
Cherry

cc:    Hon. Scott N. Freeman, District Judge
Edward T. Reed
Attorney General/Carson City
Washoe County District Attorney
Washoe District Court Clerk